IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-00799-WYD-KLM

MIKEAL GLENN STINE,

     Plaintiff,

v.

LT. SWANSON, ADX,
MR. KNOX, ADX,
DR. S. NAFZIGER, ADX,
MR. A. OSAGIE, ADX, and
MR. RON WILEY, ADX,

     Defendant(s).

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

     This matter is before the Court on **Defendants' Motion to Dismiss** [Docket No. 122; Filed December 18, 2007] ("Motion to Dismiss") and **Defendants' Motion for Summary Judgment and Memorandum Brief in Support Thereof** [Docket No. 124; Filed December 21, 2008] ("Motion for Summary Judgment").  Plaintiff did not respond to the Motion to Dismiss, but did file a response to the Motion for Summary Judgment on January 7, 2008 [Docket No. 131].  Defendants did not file a reply.  The motions have been fully briefed.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the motions have been referred to this Court for recommendation.  Having considered the pleadings and the docket in this case, the Court is fully advised of the issues presented in the motions.  For the reasons set forth below, the Court recommends that the Motion to Dismiss be **GRANTED** and the Motion for Summary Judgment be **GRANTED**.

## I. Factual Background and Complaint

Plaintiff, a prisoner proceeding *pro se*, is incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado. He brings claims against Defendants Swanson, Knox, Nafziger, Osagie, and Wiley, each in their individual and official capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671. Of the six claims asserted in Plaintiff's "Amended" Verified Complaint, [sic] Against Named Defendants in Their Official and Individual Capacities / Demand for Jury Trial on All Issues [Docket No. 29] (emphasis in original) ("complaint"), five remain. Claim III was dismissed by the District Court following its preliminary review of Plaintiff's complaint [Docket No. 31].

In his complaint, Plaintiff contends that Defendants violated his constitutional right to be free from cruel and unusual punishment when they allegedly acted with deliberate indifference toward a serious medical need by delaying treatment of his knee injury and denying him the use of a knee brace, crutches, and pain medication (Claims I, V & VI). *Complaint* [#29] at 5-6,11-13. He also alleges that he was denied access to the courts (Claim II), and that he was assaulted when Defendants used plastic ties to restrain him during an MRI procedure (Claim IV). *Id.* at 7-8, 10.

On or about December 4, 2006, Plaintiff complained to the medical staff at ADX of pain in his left knee. *Motion for Summary Judgment* [#124] at 5. He was initially seen by ADX physician's assistant Defendant Osagie. Defendant Osagie diagnosed Plaintiff with a probable torn meniscus, although he was unsure of this diagnosis because Plaintiff represented that he had a prior knee injury. *Declaration of Defendant Osagie* [#124-6] at

2. Defendant Osagie recommended that Plaintiff rest his knee, use an ice pack to reduce swelling, and elevate it until an x-ray could be taken. *Id.* Plaintiff was also prescribed ibuprofen for the pain. *Id.*

On March 28, 2007, Plaintiff was scheduled to receive an MRI on his knee. *Id.* at 3. Plaintiff was escorted to a hospital in Canon City. *Complaint* [#29] at 4. Prior to his departure, Defendant Swanson removed the knee brace worn by Plaintiff, and Plaintiff was required "to walk and climb stairs" going to and from ADX. *Id.*; *Declaration of Plaintiff* [#131] at 12. Because Plaintiff was designated as a high-risk inmate, it was necessary to restrain him during the MRI [Docket No. 124-3]. *Declaration of Defendant Swanson* [#129-11] at 4. To that end, Defendant Swanson used "plastic zip ties" to secure Plaintiff. *Complaint* [#29] at 10.

Also on March 28, 2007, Plaintiff requested that his case manager, Defendant Knox, provide him with an informal grievance form. ADX policy allows for a case manager, at his discretion, to limit the number of grievance forms provided at any given time to an inmate. *Administrative Remedy Policy* [#124-14] at 3. The failure to provide an informal grievance form, however, does not necessarily preclude an inmate from proceeding to the formal grievance process. *Declaration of Defendant Knox* [#124-13] at 3.

On June 25, 2007, Plaintiff was seen by an outside specialist, Dr. DeGroote, and recommended for surgery to repair his knee. *Declaration of Defendant Nafziger* [#124-5] at 2.[1] Plaintiff was approved for surgery on October 1, 2007 [Docket No. 124-15 at 3].

---

[1] The Court notes that the affidavits of Defendants Nafziger and Osagie are inconsistent on this point. Defendant Nafziger avers that Plaintiff was seen by a specialist and recommended for surgery in June 2007. *Declaration of Defendant Nafziger* [#124-5] at 2. Defendant Osagie avers that Plaintiff was seen by a specialist and recommended for surgery in March 2007. *Declaration of Defendant Osagie* [#124-6] at 3. A review of Plaintiff's medical

Because ADX staff were unable to perform the surgery, the Utilization Review Committee at ADX was required to approve sending him to an outside facility, as well as to prioritize and schedule his surgery considering other procedures required by other inmates. *Declaration of Defendant Nafziger* [#124-5] at 3; *Utilization Review Committee Policy* [Docket No. 124-17]. On October 22, 2007, approximately six months after Plaintiff filed the present lawsuit, Dr. DeGroote performed knee surgery on Plaintiff. *See Declaration of Defendant Osagie* [#124-6] at 3.

## II. The Motions

On December 18, 2007, Defendants filed a Motion to Dismiss Plaintiff's FTCA claim, Claim IV, pursuant to Fed. R. Civ. P. 12(b)(1). Defendants claim that the Court lacks subject matter jurisdiction to hear Plaintiff's FTCA claim. *Motion to Dismiss* [#122] at 3-4. Upon Plaintiff's request, Plaintiff was given an extension of time to respond to Defendants' Motion to Dismiss up to and including February 20, 2008 [Docket No. 141]. However, Plaintiff failed to respond to the motion.

On December 21, 2007, Defendants filed a Motion for Summary Judgment regarding Plaintiff's remaining claims, Claims I, II, V & VI, pursuant to Fed. R. Civ. P. 56. Defendants argue that there is no evidence that they violated Plaintiff's First or Eighth Amendment rights. Plaintiff timely filed a response on January 7, 2008 and attached affidavits from himself and another inmate [Docket No. 131]. Defendants did not file a reply.

## III. Analysis

### A. Standard of Review

---

records supports Defendant Nafziger's affidavit that surgery was not recommended until June 2007 [Docket No. 124-15 at 6-7 & 124-16].

Defendants filed a Motion to Dismiss Claim IV for lack of jurisdiction. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may take two forms: a facial attack or a factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003.

Defendants also filed a Motion for Summary Judgment regarding Claims I, II, V & VI. Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of evidence to support the nonmovant's case. If this burden is satisfied, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material issue. The nonmoving party must go beyond the allegations in his pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy his burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The factual record and inferences therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274

(10th Cir. 1998). However, the Court is not obligated to consider conclusory statements or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

Finally, Plaintiff is proceeding *pro se*. As such, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not the nonmoving party's advocate and must nevertheless recommend dismissal of Plaintiff's case where he does not satisfy his burden of proof. *See Hall*, 935 F.3d at 1110.

### B. Motion to Dismiss – Claim IV

The Motion to Dismiss applies exclusively to Claim IV of Plaintiff's complaint. Claim IV alleges that Defendant Swanson committed assault when he restrained Plaintiff with "plastic ties not designed for human use" while Plaintiff was undergoing his MRI. *Complaint* [#29] at 10. The basis for Defendants' Motion to Dismiss is that this claim, which is brought pursuant to the FTCA, should be dismissed due to Plaintiff's failure to first file and resolve his claim with the relevant agency as required by 28 U.S.C. § 2675. *Motion to Dismiss* [#122] at 3. Here, Plaintiff filed his original complaint on April 19, 2007 [Docket No. 3], prior to resolution of his administrative tort claim with the Bureau of Prisons ("BOP"). The BOP ultimately rejected Plaintiff's administrative tort claim on July 13, 2007 [Docket No. 122-5], and Plaintiff filed an amended complaint on July 26, 2007 [Docket No. 29].

As a preliminary matter, Defendants argue that because Plaintiff had already amended his complaint once, he did not have authority to amend his complaint on July 26, 2007, without leave of court pursuant to Fed. R. Civ. P. 15(a). *Motion to Dismiss* [# 122] at 2. However, it appears that Defendants did not carefully review the docket prior to

making this allegation. On July 13, 2007, Magistrate Judge Boyd N. Boland directed Plaintiff to file a second amended complaint within thirty (30) days of his order [Docket No. 27]. Plaintiff complied with this order when he filed his second amended complaint (which is the operative pleading for purposes of resolution of the pending dispositive motions) [Docket No. 29; Filed July 26, 2007]. To the extent that Defendants contend that Plaintiff had no authority to file the operative complaint, their assertion is contrary to the docket in this case and is rejected.[2]

An amended complaint automatically replaces a previous complaint for many case purposes. *See Mink v. Suther*s, 482 F.3d 1244, 1254 (10th Cir. 2007). However, Defendants argue that an amended complaint cannot cure a lack of subject matter jurisdiction that existed at the time of the filing of Plaintiff's original complaint. Specifically, Defendants contend that Plaintiff's failure to obtain administrative review of his tort claim prior to asserting it in his federal lawsuit (regardless of which complaint controls) cannot be cured by securing administrative review during the pendency of the federal lawsuit. *Motion to Dismiss* [#122] at 3-4. In other words, even assuming that the July 26, 2007 amended complaint was properly filed, Defendants argue that Plaintiff's FTCA claim against Defendant Swanson must nevertheless be dismissed because the Court did not have jurisdiction over this claim at the time Plaintiff filed his original complaint on April 19, 2007. I agree.

The law in the Tenth Circuit is clear that an amended complaint does not cure the

---

[2] Indeed, prior to the case being assigned to a District Court and Magistrate Judge, Senior District Court Judge Zita L. Weinshienk specifically reviewed the complaint filed by Plaintiff on July 26, 2007 and determined that Claims I, II, and IV-VI should go forward [Docket No. 31].

Court's lack of jurisdiction at the case's inception caused by Plaintiff's failure to comply with 28 U.S.C. § 2675. *See, e.g.*, *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999); *Hill v. Pugh*, 75 Fed. Appx. 715, 717 (10th Cir. Sept. 11, 2003) (unpublished decision); *Stevens v. United States*, 61 Fed. Appx. 625, 627 (10th Cir. Apr. 1, 2003) (unpublished decision). "As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Duplan*, 188 F.3d at 1199 (citing 28 U.S.C. 2675(a)). In *Duplan*, the Tenth Circuit held that "as a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.'" *Id.* (quoting *Sparrow v. USPS*, 825 F. Supp. 252, 254-55 (E.D. Cal. 1993)). This is true because "[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." *Id.* (citing *McNeil v. United States*, 508 U.S. 106, 112 (1993)). The "general rule" qualification in *Duplan* can be explained by the government's agreement in that case to the administrative closure of the first complaint. As such, the Tenth Circuit held that the general rule did not apply. *Id.* at 1199-1200; *see also Soto v. United States*, No. CIV. S-07-00866 FCD DAD, 2007 WL 2601411, at *2 (E.D. Cal. Sept. 6, 2007) (unpublished decision) (refusing to deviate from the general rule enunciated in *Duplan* where the government did not agree to the administrative closure of the first case).

Further, the general rule in *Duplan* has been applied to justify denial of leave to amend a complaint to add an FTCA claim that was not exhausted at the time of the filing of the original complaint. *See Hill*, 75 Fed. Appx. at 717-18. Finally, the Tenth Circuit has

noted that dismissal of an FTCA claim is appropriate in situations like the one at issue here. "[T]he fact that [plaintiff] ultimately exhausted [his administrative remedies does] not ripen his current action. . . . [E]ven the filing of an amended complaint . . . does not serve to cure a prematurely filed original complaint." *Stevens*, 61 Fed. Appx. at 627.

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**, and that Claim IV be **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

### C. Motion for Summary Judgment – Claims I, II, V & VI

#### 1.    Preliminary Matters

Plaintiff filed suit against Defendants in both their individual and official capacities. *Complaint* [#29] at 1. Defendants assert that they are immune from liability in their official capacities. *Motion for Summary Judgment* [#124] at 12-13. Plaintiff seeks monetary damages against the named Defendants, who are officers and agents of the United States. *Complaint* [#29] at 16-17. As such, "to the extent this suit for damages is against [these Defendants] in [their] official capacity, it is barred by sovereign immunity." *Kyler v. Everson*, 442 F.3d 1251, 1252-53 (10th Cir. 2006) (citing *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). Accordingly, Plaintiff's claims for monetary damages against Defendants in their official capacities must be dismissed.

By contrast, Plaintiff's claim for injunctive relief against Defendants Wiley and Nafziger in relation to Claim VI is not barred by the doctrine of sovereign immunity. *See Simmat v. United States BOP*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from

alleged constitutional violations). Plaintiff alleges that Defendants' policy relating to the establishment of the Utilization Review Committee violated his Eighth Amendment right to be free from cruel and unusual punishment and requests that Defendants be enjoined from employing the Utilization Review Committee. The propriety of the request for injunctive relief in Claim VI is addressed below.

Accordingly, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED** to the extent that it seeks dismissal without prejudice of Plaintiffs' claims for money damages against Defendants in their official capacities.

### 2. Claim II – 1st Amendment

In Claim II, Plaintiff asserts that Defendant Knox unconstitutionally denied him access to the courts by providing him only one informal administrative grievance form at a time. *Complaint* [#29] at 7. Plaintiff also asserts that he has fully exhausted his administrative remedies regarding this claim, and Defendants do not cite any evidence to the contrary. *Id.* at 7-8. However, Claim II must be dismissed as a matter of law because Plaintiff fails to assert any injury attributable to his alleged denial of informal grievance forms. *See Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). In his complaint, rather than cite an actual injury, Plaintiff proposes a hypothetical scenario intended to describe the type of injury he could expect to suffer if he was given only one grievance form, but had three separate grievances. *Complaint* [#29] at 5. As Defendants note in their Motion, there does not appear to be evidence of any injury in support of this claim. *Motion for Summary Judgment* [#124] at 13-14.

In his response to Defendant's Motion for Summary Judgment, Plaintiff fails to rebut Defendants' assertion that there is no evidence that he suffered an injury, nor does he

attempt to set forth a constitutional injury regarding this claim. Conclusory assertions that an injury has occurred or may occur if a hypothetical chain of events is realized do not suffice to state a claim for denial of access to the courts. *See Lewis*, 518 U.S. at 350-53; *Rice*, 166 F.3d at 1092; *Nutting v. RAM SW, Inc.*, 106 F. Supp. 2d 1121, 1123 (D. Colo. 2000) ("Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." (citation omitted)). The Court also takes judicial notice of its Order of December 21, 2007 [Docket No. 126], wherein the Court described in detail the ADX administrative grievance procedures and found that the availability of formal review, even if informal review is not immediately available, precluded Plaintiff's claim that he suffered an injury from the alleged denial of an informal grievance form. *Order* [#126] at 4-5. Accordingly, as Plaintiff has failed to provide evidence that he suffered an actual injury from Defendant Knox's alleged denial of an informal grievance form, there is no genuine issue of material fact related to this claim.

Accordingly, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED** as to Claim II, and that the claim be **dismissed with prejudice**.

### 3.    Claims I, V, & VI – 8th Amendment

Defendants assert they are entitled to qualified immunity with regard to Claims I, V, and VI.[3] *Motion for Summary Judgment* [#124] at 14-15. Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814–18 (1982).

---

[3] Defendants also assert that they are entitled to qualified immunity as to Claim II, denial of access to the Courts. *Motion for Summary Judgment* [#124] at 20. Because the Court determines that Plaintiff has failed to allege any injury in relation to this claim, constitutional or otherwise, it is unnecessary to address this contention.

"[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Defendants argue first that Plaintiff has not sufficiently alleged violations of a constitutional right with regard to any of his claims, and second, that none of Plaintiff's alleged constitutional rights were clearly established at the time of any alleged violation. *Motion for Summary Judgment* [#124] at 14-15.

A court analyzing a qualified immunity defense applies a two-part test. *See, e.g.*, *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir. 1999). First, the court determines whether the plaintiff has sufficiently alleged a deprivation of a constitutional right. *Id.* (citation omitted). If this question is answered in the affirmative, the court then determines whether the right was "clearly established." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted).

The Court now turns to the specific allegations contained in Plaintiff's complaint. Plaintiff alleges that several actions taken by Defendants amount to Eighth Amendment violations: (1) Defendant Swanson's denial of Plaintiff's use of a knee brace while being transported to and from the hospital for an MRI on his knee; (2) Defendants Nafziger, Osagie, and Wiley's delay in scheduling Plaintiff's MRI and knee surgery and their refusal to allow him to take requested pain medication or use crutches; and (3) Defendants Nafziger and Wiley's use of the Utilization Review Committee to determine the necessity

and timing of Plaintiff's knee surgery. *Complaint* [#29] at 5-8,10-13.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiffs' Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). Here, the issue is the medical care that was provided to Plaintiff. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

To the extent that Plaintiff also raises an issue related to the delay in receiving medical treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case."

*Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)). However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable").

As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e., acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

### Knee Brace – Claim I

Plaintiff claims that Defendant Swanson was deliberately indifferent to a serious medical need when he denied Plaintiff the use of a knee brace when he was being transported from ADX to the hospital for an MRI. *Complaint* [#29] at 5-6. He claims that as a result, he suffered additional injury to his knee, including swelling, bruising, and pain. Defendants argue that Plaintiff cannot show that he suffered from a serious injury that Defendant Swanson intentionally ignored. *Motion for Summary Judgment* [#124] at 16.

The Court finds that Plaintiff has shown that he suffered from a serious knee injury. He was diagnosed with a possible meniscus tear and later recommended for surgery. *Complaint* [#129] at 18-19, 21; *Motion for Summary Judgment* [#124-5] at 2. He was also prescribed the use of a knee brace. *Complaint* [#29] at 18. However, the Court finds that Plaintiff has failed to prove that the temporary and relatively brief denial of a knee brace itself caused an injury from which Plaintiff did not already suffer. Aside from Plaintiff's conclusory allegations, there is no evidence that his transportation to and from the hospital

without a knee brace caused any additional injury whatsoever. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (holding that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings"); *see also Anderson*, 477 U.S. at 249-50 (noting that "evidence [that] is merely colorable, or is not significantly probative" does not defeat summary judgment (citations omitted)).

In addition, Plaintiff has failed to prove any subjective intent as a result of Defendant Swanson's refusal to let Plaintiff wear his knee brace while being transported to and from the hospital. In Defendant Swanson's sworn affidavit, he contends that he consulted ADX nurse practitioner Nona Gladbach as to whether Plaintiff was required to wear his knee brace while being transported to and from the hospital for an MRI. *Declaration of Defendant Swanson* [#124-11] at 2. Defendant Swanson avers that Nurse Gladbach advised him that it was not necessary for Plaintiff to wear his knee brace to and from the appointment, particularly considering that the brace would have to be removed for the MRI. *Id.* Based on her advice, Defendant Swanson claims that he removed the knee brace and that throughout the duration of Plaintiff's medical appointment, Plaintiff did not complain or claim to be in pain. *Id.* at 3. Further, Defendant Swanson informs the Court that he was not aware of the details of Plaintiff's knee injury and did not knowingly subject him to harm or pain. *Id.* at 2-3.

In his response, Plaintiff does not dispute that he did not complain to Defendant Swanson about being in pain. Plaintiff does contend, however, that Defendant Swanson's affidavit is contradicted by Nurse Gladbach. *Response* [#131] at 6; *Declaration of Plaintiff* [#131] at 12. In support of this statement, Plaintiff offers only his own self-serving representation that Nurse Gladbach told him that she did not give Defendant Swanson

15

permission to remove Plaintiff's knee brace. This alleged statement alone, which is of arguable admissibility, does not satisfy Plaintiff's burden of proof in relation to this issue, i.e., it does not raise a genuine dispute of a material fact. Plaintiff does not contend that Nurse Gladbach specifically told Defendant Swanson not to remove Plaintiff's knee brace or Plaintiff would suffer injury. Such a statement, if it occurred, may have sufficiently put Defendant Swanson on notice of harm. But there is no evidence that Defendant Swanson knew of or disregarded any risk. Rather, the evidence indicates that Defendant Swanson was ordered by ADX official Mark Collins to use extreme caution in his transport of Plaintiff [Docket No. 124-4]. Given this order, and Defendant Swanson's lack of knowledge of the details of Plaintiff's injury, the Court finds that Plaintiff has failed to demonstrate that Defendant Swanson exhibited the required culpable mental state to satisfy the subjective element of the Court's Eighth Amendment analysis.

In short, the Court finds that Plaintiff has failed to put forth sufficient evidence to suggest that he suffered an additional knee injury or that Defendant Swanson knew of or disregarded an excessive risk to Plaintiff's health. Because Plaintiff has failed to show that Defendant Swanson violated a constitutional right, it is unnecessary to consider whether he is entitled to qualified immunity.

Accordingly, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED** as to Claim I, and that the claim be **dismissed with prejudice**.

### **Delay of Medical Care; Denial of Crutches, Pain Medication – Claim V**

Plaintiff claims that Defendants Nafziger, Osagie, and Wiley unreasonably delayed scheduling an MRI for Plaintiff's knee injury, and, thereafter his knee surgery. *Complaint* [#29] at 11-12. In addition, Plaintiff claims that Defendants unreasonably withheld the use

of crutches and denied his requests for pain medication such that he will suffer permanent pain and injury as a result. *Id.* Defendants argue that the delay in scheduling an MRI and knee surgery, which was an elective rather than life-threatening procedure, was reasonable and did not amount to a subjective intent to harm Plaintiff. *See Declaration of Defendant Osagie* [#124-5] at 2-4. Moreover, they argue that Plaintiff fails to prove that the delay in his medical procedures resulted in substantial harm. *Motion for Summary Judgment* [#124] at 18.

As noted above, the Court finds that Plaintiff has shown that he suffered from a serious knee injury. He was diagnosed with a possible meniscus tear and later recommended for surgery. *Complaint* [#129] at 18-19, 21; *Declaration of Defendant Osagie* [#124-5] at 2. However, the inquiry does not end with an objective showing, Plaintiff must also provide sufficient evidentiary support to show that Defendants were deliberately indifferent to his serious medical need and that substantial harm resulted.

It should be noted that an inmate's difference of opinion concerning the medical treatment he received does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). The primary issue here is Plaintiff's disagreement with the speed at which he received his MRI and his elective surgery. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Id.* (citation omitted). To the extent that Plaintiff, in his opinion, is asserting that Defendants did not satisfactorily perform their medical duties during the delay or in conjunction with it, "such a difference of opinion amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal § 1983 action. . . . [A] medical malpractice claim does not become a constitutional

violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (unpublished decision) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his knee injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim). As was the case in *Pearson*, "Plaintiff was not denied medical treatment, rather he merely disagrees with defendant's medical judgment." *See id.* In such a case, Plaintiff is unable to provide sufficient evidence of Defendant's subjective desire to cause harm to Plaintiff.

Considering the objective medical evidence before the Court, the Court also finds that Plaintiff has failed to provide sufficient evidence that the delay evidenced deliberate indifference. Plaintiff was injured in December 2006. *Complaint* [#29] at 5. He was thereafter prescribed the use of a knee brace and non-narcotic pain medication [Docket No. 124-15 at 17-18]. In March 2007, when the injury had not improved, he received an MRI. *Id.* at 14. The MRI did not conclusively establish that Plaintiff needed surgery [Docket No. 124-12]. Following the MRI, Plaintiff continued to receive care from ADX medical staff [Docket No. 124-15 at 8-12]. In June 2007, approximately three months after his MRI, Plaintiff was seen by an orthopedic surgeon who recommended that Plaintiff receive knee surgery. *Id.* at 7. In the interim, Plaintiff continued to receive care from ADX medical staff. *Id.* at 3-6. Plaintiff was approved for surgery by the Utilization Review Committee on October 1, 2007, and his surgery occurred on October 22, 2007. *Id.* at 2-3. This careful consideration of Plaintiff's medical history does not evidence a subjective intent to disregard Plaintiff's medical needs. Rather, it shows a measured attempt by Defendants to treat Plaintiff's knee injury, first with less invasive treatment and later with surgery. Because

18

"[t]he subjective component is not satisfied[] absent an extraordinary degree of neglect," the Court finds that this medical history does not provide evidence of deliberate indifference.  *See Self*, 439 F.3d at 1232.

Looking beyond Plaintiff's medical reports, there is no admissible evidence in the record that supports Plaintiff's conclusory allegation that the delay was unreasonable or that it resulted in substantial harm to him.  To the extent that the Court considers alleged hearsay statements made by third parties that the delay worsened Plaintiff's condition, the Court finds that these statements do not go far enough to establish that Plaintiff suffered substantial harm as a result of the delay.  *See Response* [#131] at 2-3.  For instance, although Plaintiff avers an alleged hearsay statement by Dr. DeGroote that Plaintiff's condition worsened during the delay, this statement does not provide evidence that Plaintiff suffered substantial harm.  Indeed, Plaintiff offers no evidence, other than his own conclusions, that the delay has left him disabled, nor does he attribute such a statement to Dr. DeGroote.  Moreover, none of the medical records indicate that Plaintiff's knee injury was substantially exacerbated between his initial injury and the MRI or between the MRI and surgery.  Indeed, the Court notes that Plaintiff has since had surgery on his injured knee, and the prognosis is that he will not have a permanent disability [Docket No. 124-15 at 2].  *Declaration of Defendant Nafziger* [#124-5] at 3 (reaching this conclusion based upon a review of Plaintiff's postoperative medical records, surgical reports, and a postoperative personal examination).  Further, Plaintiff's medical records indicate that ADX staff saw and treated Plaintiff on a frequent basis [Docket No. 124-15].  Considering the evidence before the Court, the Court finds that Plaintiff has failed to support his contentions that he suffered substantial harm or that Defendants knowingly contributed to that alleged harm.  *See*

*Olson*, 9 F.3d at 1477.

Turning to Plaintiff's allegation that Defendants, and specifically Defendant Wiley, were deliberately indifferent to his serious medical need when they denied him the use of crutches or narcotics, Plaintiff again takes issue with the type of care provided to him. The Court notes that Plaintiff was prescribed the use of non-narcotic medication and a knee brace [Docket No. 124-7]. The Court also notes that he was not prescribed the use of narcotics or crutches, although Plaintiff contends that ADX medical staff told him that he should be on crutches but Defendant Wiley refused to allow it. *Complaint* [#29] at 11-12. While Defendants did not address these specific contentions,[4] the Court finds that the same analysis set forth above applies. Specifically, because Plaintiff takes issue with the level of care he was provided and claims that more or different care should have been given, the Court finds that absent a showing that Defendants knew of and disregarded a risk of harm, Plaintiff's allegations do not raise a cognizable claim. "The question of whether a certain form of treatment should be prescribed 'is a classic example of a matter for medical judgment.'" *Tivis v. Beecroft*, No. 06-cv-02025-WYD-CBS, 2007 WL 2786434, at *10 (D. Colo. Sept. 24, 2007) (unpublished decision) (quoting *Estelle*, 429 U.S. at 107). Further,

---

[4] Defendants did contend, however, that there is no evidence that Defendant Wiley contributed to the alleged harm in relation to Claim V. Rather, they argue that Plaintiff is trying to establish liability against Defendant Wiley on the basis of his supervisory position. *Motion for Summary Judgment* [#124] at 23. Liability based on a party's supervisory position does not attach in a *Bivens* action without a showing that the supervisor personally participated in the alleged harm. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 n.58 (1978); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Here, Plaintiff alleges in his response and affidavit, both of which are sworn statements, that "Warden Wiley specifically directed that Plaintiff would not be allowed crutches stating security" concerns and that "crutches were denied based on security by order of Ron Wiley, as well [sic] directed that I not be given a narcotic pain medication." *Response* [#131] at 7; *Declaration of Plaintiff* [#131] at 12. As such, although such statements are largely conclusory, Plaintiff clearly seeks to hold Defendant Wiley liable for his own alleged conduct, not the conduct of his employees.

"[t]he denial of specific pain medications and [certain elective] surgery . . . does not constitute deliberate indifference on the part of Defendants." *Id.*; *see also Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (noting that where the "record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind," summary judgment is proper).

Here, through their affidavits, Defendants contend that Plaintiff was given "acute care" for his knee injury, and that he was given all the medical care he required. *Declaration of Defendant Nafziger* [#124-5] at 2; *Declaration of Defendant Osagie* [#124-6] at 2; *Declaration of Defendant Wiley* [#124-18] at 2. Defendants assert that such care did not include narcotics due to a BOP policy against such use except where they are clearly warranted. *Declaration of Defendant Nafziger* [#124-5] at 2; *Declaration of Defendant Wiley* [#124-18] at 2-3. Defendants also contend that they did not intentionally act to harm Plaintiff. *Declaration of Defendant Nafziger* [#124-5] at 4; *Declaration of Defendant Osagie* [#124-6] at 4; *Declaration of Defendant Wiley* [#124-18] at 5.

In response, other than his own conclusory statements, Plaintiff has offered no admissible evidence that narcotics or crutches were necessary here. Even if Dr. DeGroote's alleged hearsay statements indicate that narcotics or crutches should have been provided, there is no evidence that he conveyed this alleged opinion to Defendants. Moreover, there is no evidence that such knowledge would have changed Defendants' conduct considering the obvious security concerns associated with providing a high-risk prisoner, who has limited opportunity for mobility, the use of narcotics or crutches. Further, the Court notes that while Plaintiff was at the hospital for his MRI, the medical staff there did not find it necessary to provide him with crutches. *Declaration of Defendant Swanson*

[#124-11] at 3.  Nor is there any evidence in Plaintiff's pre-surgery medical records to suggest that narcotics or crutches were necessary.  To the contrary, the MRI report indicated that the "lateral meniscus was normal," "there was no significant abnormal fluid," and there was only the suspicion of a "tear of the posterior horn of the medial meniscus reaching the inferior surface" [Docket No. 124-12].  This report also does not suggest that Plaintiff's injury was emergent.  As discussed at length above, a "prisoner's right is to medical care–not to the type or scope of medical care which he personally desires." *Henderson v. Sec. of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted).

The Court agrees that Plaintiff has failed to prove any subjective intent or substantial harm as a result of Defendants' delay in securing an MRI or surgery or their alleged denial of crutches and narcotics.  Even were the Court to find that Plaintiff sufficiently established a constitutional injury, Defendants are entitled to qualified immunity.  In this regard, Plaintiff bears the burden of proving that Defendants' actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  Plaintiff's allegations against Defendants are that they delayed his medical treatment and denied Plaintiff the use of crutches and narcotics.  Based on the facts at issue in this case, I find that Plaintiff has failed to prove that the law was clearly established that such delay or method of treatment violates the Eighth Amendment.  Plaintiff has pointed to no cases that suggest that the delay of his knee surgery, where no substantial harm resulted, and the denial of crutches or narcotics, when a knee brace and non-narcotic medication were provided and valid security concerns were at issue, are clear violations of his Eighth Amendment rights.  *See generally Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a

broad general proposition."). It is not enough to argue that the law clearly establishes that the denial of adequate medical care may be an Eighth Amendment violation. *See id.* "Rather, . . . 'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.'" *Id.* (citation omitted). Even giving credence to Plaintiff's assertion that he suffered some pain as a result of the delay or chosen methods of care, the law does not clearly establish that the mere presence of pain violates the Eighth Amendment. *See Sealock*, 218 F.3d at 1210-11. In fact, the Court notes that discomfort and the inability of an inmate to dictate the timing and methods of care he receives are necessary results of incarceration. *See Hudson*, 503 U.S. at 9 (noting that "society does not expect that prisoners will have unqualified access to health care"). As such, I find that even if Plaintiff could successfully show a constitutional injury, Defendants are entitled to qualified immunity.

Accordingly, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED** as to Claim V, and that the claim be **dismissed with prejudice**.

### Utilization Review Committee – Claim VI

Plaintiff claims that Defendants Nafziger and Wiley "have established what is call [sic] a Utilization Committee that is made up of random BOP employees of ADX such as cooks, counselors, and facilities [sic] staff such as plummers [sic]" to determine whether an inmate should receive recommended surgery. *Complaint* [#29] at 13. Plaintiff claims that the use of the Utilization Review Committee delayed his treatment of a "known serious medical injury" and "constitut[es] deliberate indifference to serious medical condition and

allowing me to suffer unnecessary pain and additional injury . . . ." *Id.*

As noted previously, the Court finds that Plaintiff has shown that he suffered from a serious knee injury. However, the Court also finds that Plaintiff has failed to prove any subjective intent or substantial harm as a result of Defendants' delay in providing him knee surgery. Regarding the Utilization Review Committee, to the extent that Plaintiff claims Defendants Wiley and Nafziger created the Utilization Review Committee for the purpose of delaying his knee surgery, he has failed to submit any evidence, other than his own conclusory allegations, to this effect. In fact, Defendants assert that the Utilization Review Committee was created pursuant to BOP regulations and consists of a specific group of agency employees who are in a position to make medical and financial determinations regarding the timing and prioritization of an inmate's surgery [Docket No. 124-17]. *Declaration of Defendant Wiley* [#124-18] at 3. Plaintiff's conclusory assertion that the Utilization Review Committee is made up of unqualified staff members such as cooks and plumbers is not supported by the evidence. Moreover, the irrefuted evidence establishes that Defendant Wiley does not serve on the Utilization Review Committee. *Id.* The record contains no evidence that Defendants used the Utilization Review Committee as a vehicle to harm Plaintiff. Indeed, the committee ultimately approved Plaintiff for surgery approximately three months after Plaintiff was recommended to receive surgery. Defendant Wiley deferred to the committee and thereafter approved Plaintiff's transfer to the hospital within three weeks of the committee's approval. *Id.* at 3-4. This objective history does not evidence deliberate indifference to a serious medical need.

Regardless, even if Plaintiff could successfully show a constitutional injury, I find that Defendants are entitled to qualified immunity. Plaintiff has not directed the Court to any

established law that invalidates the use of the BOP's Utilization Review Committee. Indeed, the Court has not located a case which holds that allowing a committee of qualified members to make decisions about the necessity and prioritization of an inmate's medical procedures violates the Eighth Amendment.

Accordingly, I respectfully **RECOMMEND** that the Motion for Summary Judgment be **GRANTED** as to Claim VI, and that the claim, including any injunctive relief associated with it, be **dismissed with prejudice**.[5]

## IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that the Motion to Dismiss be **GRANTED,** and that Claim IV be **DISMISSED without prejudice**.

The Court FURTHER RECOMMENDS that the Motion for Summary Judgment be **GRANTED**, and that Claims I, II, V & VI be **DISMISSED with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

---

[5] In their Motion for Summary Judgment, Defendants analyze whether the injury alleged in Plaintiff's FTCA claim (Claim IV) additionally asserts an Eighth Amendment injury. *Motion for Summary Judgment* [#124] at 21-22. However, the Court finds that such an analysis is unnecessary as Plaintiff failed to assert an Eighth Amendment violation in relation to the alleged injuries contained in Claim IV. As noted earlier, Claim IV is dismissed in its entirety, and to the extent that Plaintiff alleges facts and injuries in Claim IV that are not also asserted in other claims of Plaintiff's complaint, the Court does not address these allegations further. To the extent that Plaintiff asserts that the allegations at issue in Claim IV are also supported by "Colorado State Statute," *Complaint* [#29] at 10, he has failed to specifically allege which statutes are implicated or justify his allegations pursuant to those statutes.

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 29, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix